Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5716 | **DATE** | 5/22/2002 |
| **CASE TITLE** | (97B 28109) State Security v. Chicago Housing Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we adopt the findings of fact and conclusions of law of the bankruptcy court and enter summary judgment in favor of the CHA. This case is terminated. This is a final and appealable order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 2 4 2002 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | 5 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | |
| TSA | Bankruptcy courtroom Court deputy's initials | date mailed notice | |
| | tll | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



MAY 24 2002

| | |
|---|---|
| IN RE: ) | |
| ) | |
| STATE SECURITY, INC., ) | |
| ) | Chapter 7 |
| ) | |
| ) | Case No. 97 B 28109 |
| Debtor. ) | |
| ) | Adversary No. 98 A 02094 |
| ) | |
| KAREN R. GOODMAN, TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 5716 |
| v. ) | |
| ) | Wayne R. Andersen |
| CHICAGO HOUSING AUTHORITY, ) | District Court Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the objections filed by Bankruptcy Trustee Karen Goodman to the proposed findings of fact and conclusions of law issued in an opinion by Bankruptcy Judge Barliant. For the following reasons, we adopt the findings of fact and conclusions of law and enter summary judgment on behalf of defendant Chicago Housing Authority.

### BACKGROUND

The following information is taken from the undisputed findings of fact included in Judge Barliant's opinion. State Security, Inc. ("State Security") and the Chicago Housing Authority (the "CHA") entered into a written contract in June, 1996 whereby State Security agreed to

provide security services at CHA managed properties from July 1, 1996 to June 30, 1997. The contract stated that State Security would provide "234 qualified and trained uniformed armed guards . . . for stationary and foot patrol at various CHA locations pursuant to regularly scheduled deployments . . . and such additional Security Officers as may be requested by the CHA from time to time for special or emergency situations . . . ." (Trustee's Compl. Ex. A at 5.) The contract also provided that the CHA could either terminate the agreement without cause upon 30 days notice or terminate without notice if State Security's license was revoked or suspended or terminate with notice if State Security otherwise breached the agreement.

On August 1, 1996, State Security notified the CHA by letter that it was "unable to deploy personnel in accordance with the Agreement due to unsafe conditions in CHA buildings," and on August 27, 1996, the CHA issued an internal memorandum recommending State Security's termination for breach due to State Security's unsatisfactory performance under the contract. (Trustee's 402M Statement ¶ 31.) On September 20, 1996, State Security sent the CHA a letter detailing instances of the CHA coordinators' "severely unprofessional conduct" and advising the CHA that this conduct was jeopardizing State Security's officers' safety and prohibiting State Security from properly deploying officers in accordance with their contract. (Trustee's 402M Statement ¶ 33.) On September 24, 1996, the parties met and discussed these problems, although the parties dispute the exact outcome of that meeting. In addition to disputing whether, after the September 24th meeting, State Security was only required to deploy 50 officers to be in compliance with the parties' agreement, the parties also disagree as to whether State Security actually deployed 50 officers. The parties further dispute whether the CHA required a 234 officer deployment during July and August, 1996. There is no dispute that

2

State Security sent, and the CHA received, timely invoices with all necessary supporting documentation requesting payment for services rendered, but the parties disagree as to the amount, if any, due and owing under those invoices.

On October 18, 1996, the CHA directed State Security to stop the deployment of its officers at all CHA locations. The CHA's justification for stopping State Security's services was that State Security's operating license had expired. It is undisputed that State Security's license expired on August 31, 1996 and was not reinstated until October 21, 1996. The CHA sent State Security a letter of termination on October 23, 1996. The October 23rd termination letter stated that State Security had breached § 7.7(A) of the agreement between the parties by allowing its license to expire and not timely renewing the license. Section 7.7(A) provides that State Security must at all times remain licensed in good standing under Illinois law. In addition, the October 23rd letter "stated that [State Security] had failed to perform certain contractual obligations relating to the number of officers deployed and the unsatisfactory performance of those officers." (Trustee's 402M Statement ¶ 29.)

On September 15, 1997, State Security filed for relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. Thereafter, the chapter 7 interim trustee, Karen Goodman (the "Trustee"), filed a two-count adversary complaint alleging that the CHA had breached the contract between the parties by unjustifiably terminating the agreement and by failing to pay for services rendered. Both parties moved for summary judgment.

On August 23, 2000, Judge Barliant issued proposed findings of fact and conclusions of law in which he determined that the CHA was entitled to summary judgment as to Counts I and II. The Trustee filed objections to Judge Barliant's opinion and the CHA has filed a response to

3

those objections. Judge Barliant then transmitted his proposed findings of fact and conclusions of law to us and recommended that we enter summary judgment in favor of the CHA.

## DISCUSSION

The bankruptcy court's jurisdiction is statutory, rooted in Title 11 of the United States Code. 28 U.S.C. § 1334(b). Its jurisdiction derives from that of the district courts and extends to proceedings related to cases brought under Title 11. *In re FedPak Systems, Inc.*, 80 F.3d 207, 213 (7th Cir. 1996). In cases that are not directly related to matters arising under Title 11, called "non-core proceedings," the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). The district court then conducts a *de novo* review of any portion of the bankruptcy judge's proposal to which a party makes specific written objection and enters any final order or judgment. 28 U.S.C. § 157(c)(1); Fed. R. Bank. Proc. 9033(d).

While the Trustee has raised seven objections to Judge Barliant's opinion, all of the objections rest on one critical argument - that State Security was in fact "licensed" as a private security contractor, as that term is defined in the Illinois Private Detective, Private Alarm, Private Security and Locksmith Act of 1993 (the "Act"), 225 ILCS 446/1 *et seq.* According to the Trustee, since State Security possessed a license issued by the state for the period lasting from August 31, 1996 to October 23, 1996, the CHA was not entitled to terminate its contract without 30 days notice and State Security should have been paid for services rendered during this time frame. The issue we must resolve *de novo* is what legal consequences arose from State Security's failure to renew its license to act as a security contractor from August 31, 1996 to

4

October 23, 1996. In other words, was State Security in fact "licensed" by the state during the time in which its license was expired/un-renewed?

We begin our analysis, as we must, with the text of the statute at issue. In enacting the Act, the Illinois General Assembly intended the statute "to regulate persons and businesses licensed under this Act for the protection of the public." 225 ILCS 446/10. While the Act describes the procedures by which a private security contractor can secure a state-issued license, the General Assembly also explicitly defined what constitutes a violation of the Act. Specifically, the Act states that the "practice of a private detective, private security contractor . . . private security contractor agency . . . by any person, firm, association or corporation that has not been issued a license or certificate . . . or whose license or certificate has been suspended, revoked, *or not renewed*, is hereby declared to be inimical to the public welfare and to constitute a public nuisance." 225 ILCS 446/20 (emphasis added). It is clear from this language that any private security contractor that possessed a license from the state to contract for private security services but allowed that license to expire (perhaps because it failed to pay the required renewal fee) violated the Act during the time in which the license was expired. The fact that the private security contractor subsequently paid a fee to reinstate its license does not mitigate a finding that, during the period when the license was expired, the contractor was in violation of the Act.

That having been said, we now turn our attention to the legal conclusions made by the bankruptcy court. We begin with the contract between State Security and the CHA. In Section 7.7(A) of the contract, State Security represented to the CHA that it was, and would "remain at all times during the Contract Term, a licensed 'Private Security Contractor Agency' in good standing under the laws of the State." In light of our discussion above concerning the Illinois

5

Private Detective Act, we agree with the conclusion of Judge Barliant that State Security did not comply with the requirement in the contract that State Security remain a licensed private security contractor in good standing under Illinois law. It is undisputed that from September 1, 1996 until October 21, 1996, State Security's license to act as a private security contractor had expired. Under Section 20 of the Act, acting as a private security agency with an expired license constitutes a violation of the Act. *Ergo*, State Security was not at all times a private security contractor agency in "good standing under the laws of the State." As Judge Barliant appropriately noted, the failure to have a valid license from September until the end of October was a breach of contract.

The contract between State Security and the CHA contained a specific provision concerning the consequences of a breach committed by State Security. According to section 6.2(A), if State Security breached the contract, then "the CHA [was entitled to] terminate this Agreement by written notice of termination to [State Security], effective immediately upon receipt of such notice by [State Security]." Notably, the contract does not contain a cure provision. It is undisputed that the CHA sent a written notification, pursuant to Section 6.2(A), of its intent to immediately terminate the contract on October 23, 1996. Accordingly, we find that the CHA properly adhered to the termination provisions of the contract between it and State Security. Therefore, we concur with and adopt Judge Barliant's finding that the CHA was entitled to summary judgment on Count I of the Trustee's complaint.

As for Count II of the complaint, the crux of the Trustee's objections to the bankruptcy court's opinion again revolves around the issue of the expiration of State Security's license to operate as a private security contractor. The Trustee argues that since State Security's license

was never revoked or suspended by the State it should be entitled to payment for services rendered from September 1, 1996 to October 21, 1996. We disagree.

As Judge Barliant correctly noted, in Illinois, a statute which declares an act illegal and which imposes "a penalty for its violation, renders a contract for the performance of such an act void and unenforceable." *T.E.C. & Assoc. v. Alberto-Culver Co.*, 131 Ill. App. 3d 1085, 1094, 476 N.E.2d 1212 (2nd Dist. 1985). *See also Ransburg v. Haase*, 224 Ill. App. 3d 681, 685, 586 N.E.2d 1295 (3rd Dist. 1992) (stating that "a person practicing a profession without a license can not recover fees for services rendered" and permitting a customer to recover fees paid to an unlicenced architect). We have already concluded that State Security's provision of security services to the CHA during a time when its license had expired constituted a violation of the Illinois Private Detective Act. The Act further declares that a contractor whose license has not been renewed may be subject to injunctive relief for this violation and that the State may sanction the "[f]ailure to comply with any provision of this Act." 225 ILCS 446/20 and 446/120(a)(18). Therefore, we find, as Judge Barliant did, that State Security is barred under Illinois law from recovering for any services rendered while its license was expired. The CHA is entitled to summary judgment on Count II of the Trustee's complaint.

## CONCLUSION

For the foregoing reasons, we adopt the findings of fact and conclusions of law of the bankruptcy court and enter summary judgment in favor of the CHA. This case is terminated. This is a final and appealable order.

Wayne R. Andersen
United States District Judge

Dated: May 22, 2002